UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X   Case No.: 1:21-cv-00776
GEMA GARCIA,

                           Plaintiff,                          COMPLAINT

   -against-

QATAR AIRWAYS Q.C.S.C., and MAHAM         PLAINTIFF DEMANDS
MUKHTAR, *Individually*,                                    A TRIAL BY JURY

                           Defendants.
------------------------------------------------------------------X

       Plaintiff, GEMA GARCIA, by Plaintiff's attorneys, PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the **Family and Medical Leave Act**, 29 U.S.C. § 2601, *et seq*. ("FMLA"), the **Americans with Disabilities Act of 1990**, 42 U.S.C. § 12101, *et seq*. ("ADA"), the **New York State Human Rights Law**, New York State Executive Law § 296, *et seq*. ("NYSHRL"), and the **New York City Human Rights Law**, New York City Administrative Code § 8-502(a), *et seq*. ("NYCHRL"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of her actual and/or perceived disabilities (depression and anxieties), retaliated against for requesting an accommodation, being subjected to a **hostile work environment** by her employer and ultimately unlawfully terminated from her position.

## Jurisdiction and Venue

2. Jurisdiction of this Court is proper under 29 U.S.C. § 2601, 42 U.S.C. §12101, et seq., and 28 U.S.C. §§ 1331 and 1343 as it arises under the laws of the United States and is an action

1

to recover damages or to secure equitable or other relief under an Act of Congress providing for the protection of civil rights.

3. The Court has supplemental jurisdiction over Plaintiff's claims brought under State and City Laws pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district in that a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of the State of New York. 28 U.S.C. § 1391(b).

## PROCEDURAL PREREQUISITES

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated January 8, 2021, with respect to the herein charges of discrimination. A copy of the Notice is annexed hereto as Exhibit A.

7. This Action is being commenced within ninety (90) days of receipt of said Right to Sue.

8. Contemporaneously with the filing of this Complaint, Plaintiff mailed a copy of the Complaint to the New York City Commission on Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York ("Corporation Counsel") pursuant to the notice requirements of Section 8-502 of the New York City Administrative Code. A copy of the certificate of service of the complaint on the NYCCHR and the Corporation Counsel is annexed hereto as Exhibit B.

## PARTIES

9. At all times material, Plaintiff is a 33-year-old female, who is a resident of the State of Florida.

10. At all times material, Defendant Qatar Airways Q.C.S.C. (hereafter "QATAR AIRWAYS"), was and is a foreign business corporation incorporated and headquarters in Doha, Qatar.

11. At all times material, Defendant QATAR AIRWAYS is a major international airline that provides aerial transportation services to its customers and serves an extensive network that includes over 150 international destinations across Africa, Asia, Europe, the Americas, and Oceania from its base at Hamad International Airport, in Doha.

12. At all times material, Defendant QATAR AIRWAYS conducts and operates business pursuant to, and by virtue of, the laws of the State of New York, with an office located at 350 5th Avenue, Suite 7630, New York, New York 10118 (hereafter "Office").

13. At all times material, Defendant QATAR AIRWAYS was engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e.

14. At all times material, Defendant MAHAM MUKHTAR (hereafter "MUKHTAR") is and was an employee of Defendant QATAR AIRWAYS holding the position of Regional Manager.

15. At all times material, Defendant MUKHTAR was Plaintiff's supervisor and had the ability to make decisions regarding the terms and conditions of Plaintiff's employment. Defendant MUKHTAR is being sued herein in her official and individual capacities.

16. Defendant QATAR AIRWAYS and Defendant MUKHTAR are collectively referred to herein at times as "Defendants."

17. At all times material, Plaintiff was an employee of Defendants.

## **MATERIAL FACTS**

18. On or about May 1, 2018, Defendant QATAR AIRWAYS began employing Plaintiff as a Human Resources Officer located in their Office.

19. As a Human Resources Officer for Defendant QATAR AIRWAYS' Office, Plaintiff's job duties included, but were not limited to, coordinating recruitment activities, screening and interviewing job candidates, and assisting with the induction process by coordinating with required departments for a smooth onboarding.

20. Upon information and belief, Plaintiff's performance was above-average while working for Defendants.

21. At the time Plaintiff's employment ended, Plaintiff was earning a salary of approximately $67,000 per year.

22. While employed by Defendants, Plaintiff experienced severe emotional distress, depression, anxiety and a host of other mental/psychological issues.

23. In or around June of 2018, Plaintiff sought therapy and counseling for her depression and anxiety.

24. For approximately the first six months of Plaintiff's employment, Plaintiff's supervisor was Ms. Natasja Pieterse.

25. In or around November 2018, Defendant MUKHTAR replaced Ms. Natasja Pieterse and began supervising Plaintiff.

26. On or about August 8, 2019, Plaintiff notified Defendant MUKHTAR of her disabilities, namely depression and anxiety, and requested accommodations.

27. Plaintiff explained to Defendant MUKHTAR that, due her mental illness, she was requesting an accommodation because her depression was substantially affecting her ability to perform well at work.

28. Thereafter, Defendant MUKHTAR granted Plaintiff's accommodation of two weeks' time off effective August 26, 2019, to September 6, 2019, so that she could pursue treatment for her depression and anxiety.

29. On or about August 15, 2019, Plaintiff provided Defendant MUKHTAR with medical documents from her psychologist, Dr. John Ryder, diagnosing Plaintiff with anxiety and depression.

30. Plaintiff began experiencing a hostile work environment immediately upon her return from her two weeks off to address her disability.

31. For example, on or about September 18, 2019, Defendant MUKHTAR informed Plaintiff that she didn't feel comfortable with Plaintiff's performance. Plaintiff questioned Defendant MUKHTAR, asking her to identify the specific problem with Plaintiff's work performance, as Plaintiff had completed every assigned project. Instead of providing specifics, Defendant MUKHTAR responded in a vague manner and said, in sum and substance, "I just don't feel happy with your performance."

32. Moreover, Defendant MUKHTAR indicated she would be monitoring Plaintiff for the next two months to determine whether Plaintiff was a good fit for the team and was sufficiently "effective." Plaintiff asked Defendant MUKHTAR to clarify and/or provide measurable goals so Plaintiff could improve her "effectiveness." Defendant MUKHTAR responded, in sum and substance, "I don't know, Gema. Just be effective."

33. During the period of approximately October 2019 through November 2019, Defendant MUKHTAR would regularly target and single Plaintiff out by treating Plaintiff disparately and negatively.

34. By way of example, on various occasions, Defendant MUKHTAR called Plaintiff "incompetent" in front of her colleagues, criticize every task performed by Plaintiff, and undermined Plaintiff's professional suggestions and decisions.

35. By way of another example, Defendant MUKHTAR purposefully and intentionally excluded Plaintiff from various projects and trainings.

36. Prior to Plaintiff sharing with Defendant MUKHTAR her diagnosis of mental illness, Defendant MUKHTAR had not targeted Plaintiff for negative treatment but, rather, had treated her the same as other employees.

37. After Plaintiff shared her diagnosis, Defendant MUKHTAR constantly singled out Plaintiff for criticism.

38. Plaintiff reminded Defendant MUKHTAR she was undergoing treatment for depression and seeking counseling from a therapist and a psychologist.

39. On various occasions Defendant MUKHTAR responded, in sum and substance, "Just get over it" and/or "I feel you are lying [about depression and anxiety], and you just don't want to do your job."

40. As a result of Defendant MUKHTAR's discriminatory treatments and lack of accommodation for Plaintiff's mental disabilities, Plaintiff's work performance declined and deteriorated.

41. On or around the last week of November 2019, Defendant MUKHTAR called a meeting with Plaintiff and Mr. Matthew Lonski, (hereafter "Mr. Lonski"), another Human

Resources Manager. During the meeting, Defendant MUKHTAR issued a final written warning. As a result, Plaintiff would not be eligible for promotions for a year.

42. Plaintiff reasonably believed Defendant MUKHTAR issued a final written warning in retaliation for disclosing her mental disabilities and requesting an accommodation. Moreover, Plaintiff believed the final written warning was intended to lay the pretextual groundwork for employment termination.

43. Defendant MUKHTAR's harassment and retaliatory manner exacerbated Plaintiff's depression and anxiety.

44. On or about January 1, 2020, Plaintiff experienced a traumatic event (hereafter "the Incident"). Plaintiff had woken up in a hospital with no recollection of the events of the previous night. Law enforcement officers were assigned to investigate the Incident. Plaintiff was unable to return to work until January 13, 2020.

45. On or about January 17, 2020, Plaintiff discussed with her mental health care provider the need to take a longer leave of absence from work due to her depression and anxiety, as either short-term disability and/or FMLA leave.

46. On or about February 3, 2020, Plaintiff experienced an emotional and mental breakdown triggered by a conversation with a law enforcement investigator regarding the Incident. Plaintiff's mental state was in turmoil.

47. Plaintiff notified Defendants that she needed to use two days of her accrued paid time off. She mentioned that she would be speaking with a law enforcement investigator and that she had a doctor's appointment.

48. During her two days off work, Plaintiff met with the law enforcement investigator and her doctor virtually (by telephone). She also flew to Florida in order to receive emotional support from her immediate family, who was located there.

49. Plaintiff did not mention the visit to her family to Defendant MUKHTAR because she feared admitting to Defendant MUKHTAR that she required emotional support. This fear stemmed from Defendant MUKHTAR's hostile treatment of Plaintiff since Plaintiff had disclosed her depression and anxiety to Defendant MUKHTAR, including Defendant MUKHTAR's insistence that Plaintiff "get over" her depression and anxiety.

50. On or about February 6, 2020, Plaintiff returned to work and started the process for applying for short-term disability and Family and Medical Leave ("FMLA").

51. Plaintiff informed Mr. Lonski of her intention to apply for FMLA and short-term disability leave.

52. On or about February 10, 2020, as Plaintiff was preparing to submit her completed applications for short-term disability and FMLA, Defendant MUKHTAR suspended Plaintiff.

53. Defendant MUKHTAR stated that the reason for the suspension was that Plaintiff had traveled to Florida during her time off without disclosing it to management.

54. When Plaintiff explained that she had gone to Florida to receive emotional support from her family, and that she had not felt comfortable sharing that plan with Defendant MUKHTAR, Defendant MUKHTAR responded, in sum and substance, "Gema, I don't believe you, I feel you are making this up; I feel you just make up stories and you are not depressed and none of what you claim has happened is real." Defendant MUKHTAR

further stated, in sum and substance, "Gema, you know you would make this easier if you just resigned."

55. Plaintiff reasonably believed the reason offered for her suspension was a pretext for Defendant MUKHTAR's discrimination based on Plaintiff's disability as well as retaliation against Plaintiff for taking sick leave in connection with such disability to date, and interference with her plan to take short-term disability leave and FMLA in the immediate future.

56. Later that day, Plaintiff reported Defendant MUKHTAR's discrimination, harassment, and retaliation to Ms. Galia Shaw, Senior Human Resource Business Partner at Qatar Airways. Plaintiff forwarded to Shaw an email she had sent to Mukhtar, in which she refuted MUKHTAR's characterization of her illness as mere "stories" and also explained that she had gone to Florida to receive emotional support from her family and had not felt comfortable sharing that with MUKHTAR when she took sick time. Plaintiff also shared that MUKHTAR's treatment of her had been a trigger for her depression and anxiety.

57. On or about February 27, 2020, Mr. Lonski notified Plaintiff via email that her employment had been terminated.

58. It is clear Defendants wrongfully suspended, and thereafter terminated, Plaintiff's employment on basis of her disability, in retaliation for Plaintiff taking time off in connection with her disability, and as interference with her plan to take short-term disability and FMLA.

59. Plaintiff's mental impairment of depression and anxiety qualifies as a disability and is protected under the ADA, as well as New York State and New York City discrimination laws.

60. But for Defendant MUKHTAR's supervisory position with Defendant QATAR AIRWAYS, Defendant MUKHTAR would not have been able to subject Plaintiff to discriminatory treatment, hostile work environment, retaliation, and FMLA interference.

61. At all times prior to Plaintiff's employment termination, Defendants were aware of Plaintiff's medical, mental or psychological disabilities and failed to provide reasonable accommodation as required under the ADA.

62. Defendants knew or should have known of Defendant MUKHTAR's discriminatory, retaliatory, and interfering conduct against Plaintiff but failed to take corrective measures within its control and did nothing to correct her unlawful behavior.

63. Rather than engaging in a meaningful interactive process regarding the disability accommodation of short-term disability and FMLA leave, Defendants terminated Plaintiff's employment.

64. Defendants did not attempt to provide a reasonable accommodation to Plaintiff when her disability mandated that she take FMLA and short-term disability leave.

65. Plaintiff felt humiliated and emotionally distraught by the chain of events leading to her resignation.

66. Plaintiff was a diligent, conscientious employee, who communicated clearly with Defendants about her disability.

67. As a result of the hostile work environment and harassment created and perpetuated by the Defendants, Plaintiff suffered and continues to suffer emotional distress.

68. The above are just some examples of how Defendants regularly and continually harassed Plaintiff while employing Plaintiff.

69. Defendants created a hostile work environment, which unreasonably interfered with Plaintiff's ability to perform Plaintiff's job.

70. Plaintiff was repulsed, offended, disturbed, humiliated, victimized, and disgusted by this blatantly unlawful harassment, discrimination and hostile work environment.

71. Plaintiff was treated this way solely due to Plaintiff's disabilities and because of her objections to the discriminatory and retaliatory actions taken against Plaintiff.

72. Defendants had no good faith business justification for terminating Plaintiff employment.

73. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

74. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

75. Defendants acted maliciously, willfully, outrageously, and with full knowledge of the law.

76. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of employment and income, the loss of a salary, loss of bonus, loss of benefits, and is entitled to compensation.

77. As a direct result of the acts and conduct complained of herein, Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further experienced severe emotional distress.

78. Defendants acted maliciously, willfully, outrageously, and with full knowledge of the law.

79. As such, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

80. Further, Plaintiff is entitled to liquidated damages in an amount to be determined at trial, because the Defendants willfully violated FMLA, ADA, NYSHRL and the NYCHRL by discriminating against Plaintiff.

**First Cause of Action for Retaliation
Under the Family and Medical Leave Act
(Against All Defendants)**

81. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

82. Section 2612(D) of the Family Medical Leave Act, states in pertinent part: "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period … Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

83. Section 2615(a) of the Family Medical Leave Act, states in pertinent part:

    Interference with rights.

    (1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

    (2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

84. Defendants took adverse employment actions against Plaintiff in retaliation for taking leave under the FMLA.

85. As such, Plaintiff has been damaged as set forth herein.

**Second Cause of Action for Discrimination
Under the Americans With Disabilities Act
(Not Against Individual Defendant)**

86. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

87. Section 12112 of the ADA, titled "Discrimination," provides:

> (a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

88. Defendant QATAR AIRWAYS violated this section as set forth herein.

89. Plaintiff is entitled to the maximum amount allowed under this statute/law.

### Third Cause of Action for Retaliation
### Under the Americans With Disabilities Act
### (Not Against Individual Defendant)

90. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

91. The ADA prohibits retaliation, interference, coercion, or intimidation.

92. Section 12203 of the ADA provides:

> a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
>
> b) Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

93. Defendant QATAR AIRWAYS violated this section as set forth herein.

94. Plaintiff is entitled to the maximum amount allowed under this statute/law.

**Fourth Cause of Action for Discrimination**
**Under the New York State Executive Law**
**(Against all Defendants)**

95. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

96. New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

97. Defendants violated the section cited herein as set forth.

**Fifth Cause of Action for Discrimination**
**Under the New York State Executive Law**
**(Not Against Corporate Defendant)**

98. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

99. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

100. Defendant MUKHTAR engaged in an unlawful discriminatory practice in violation of New York State Executive Law § 296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory and retaliatory conduct.

**Sixth Cause of Action for Retaliation**
**Under the New York State Executive Law**
**(Against All Defendants)**

101. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

102. New York State Executive Law § 296(1)(e) provides that, "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

103. Defendants violated the section cited herein as set forth.

104. Plaintiff is entitled to the maximum amount allowed under this statute.

**Seventh Cause of Action for Discrimination**
**Under the New York City Administrative Code**
**(Against all Defendants)**

105. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

106. The New York City Administrative Code § 8-107(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation, uniformed service, or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

107. Defendants violated the section cited herein as set forth.

### Eighth Cause of Action for Discrimination
### Under the New York City Administrative Code
### (Not Against Corporate Defendant)

108. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

109. The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

110. Individual Defendant MUKHTAR engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

111. Individual Defendant violated this statute as set forth.

### Ninth Cause of Action for Retaliation
### Under the New York City Administrative Code
### (Against All Defendants)

112. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

113. The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

114. Defendants violated the section cited herein as set forth.

115. Plaintiff is entitled to the maximum amount allowed under this statute.

### Tenth Cause of Action for Vicarious Liability
### Under the New York City Administrative Code
### (Not Against Individual Defendant)

116. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

117. The Administrative Code of City of New York § 8-107(13) provides for employer liability for discriminatory conduct by an employee, agent or independent contractor. This sub-section states:

> a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
>
> b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.
>
> c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

118. Defendant QATAR AIRWAYS violated the section cited herein as set forth.

## JURY DEMAND

119. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the Family Medical Leave Act, Americans of Disabilities Act, New York State Human Rights Law, and the New York City Administrative Code, in that Defendants discriminated against Plaintiff on the basis of her actual and/or perceived disability, retaliated against Plaintiff due

17

to her request for accommodation and created a hostile work environment resulting in Plaintiff's employment termination;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful harassment, discrimination, retaliation, and conduct and to otherwise make Plaintiff whole for any losses suffered because of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering, and injury to Plaintiff's reputation in an amount to be proven;

D. Awarding Plaintiff damages for loss of income, the loss of a salary, bonus, benefits, and other compensation, which such employment entails;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff liquidated damages;

G. Awarding Plaintiff prejudgment interest;

H. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

I. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
       January 28, 2021

**PHILLIPS & ASSOCIATES,**
**ATTORNEYS AT LAW, PLLC**

By: ___/s/ *Lisa Skruck, Esq.*___
Lisa Skruck, Esq.
Steven R. Filosa, Esq.
Attorneys for Plaintiff
585 Stewart Avenue – Suite 410
Garden City, New York 11530
(212) 248-7431
lskrunk@tpglaws.com
sfilosa@tpglaws.com